REGAN, Judge.
The plaintiff, John W. Wright, a welder, instituted this suit against the defendant, Avondale Marine Ways, Inc., his employer, endeavoring to recover workmen’s compensation at the rate of $30 per week for a period of twenty-four weeks, subject to a credit of one week, and $500 medical expenses, for temporary disability as a result of a fracture incurred by him on April 11, 1952, to the large toe of his left foot when a piece of steel rolled thereon during the course of his employment.
The defendant answered admitting the occurrence of the accident, but in substance denied that plaintiff suffered any disability beyond a period of one week, for which he was paid compensation.
From a judgment in favor of defendant dismissing plaintiff’s suit, he has prosecuted this appeal.
The record reveals relatively simple and undisputed facts.
On April 4, 1952, one week prior to his injury, plaintiff obtained employment with defendant as a welder and tacker. In describing the duties of his job, he elucidated thereupon as follows:
“I had to get in any position on the boat, I mean climb, pull the cable, heavy iron work. I mean carry it, pull your cable, climb up. Most of the work was on the bottom of boats that were being built upside down.”
On April 11, 1952, plaintiff incurred a fracture to the large toe of his left foot when a piece of steel was accidentally caused to roll thereon. He was taken to the Baptist Hospital where the toe was x-rayed and the requisite treatment administered.
On April 14, 1952, plaintiff visited the offices of defendant’s physician, Dr. D. J. Farley, who removed the old bandage and reapplied a soft adhesive supportive bandage immobilizing the toe in its entirety. He then instructed plaintiff to return for additional treatment on April 19, 1952, at which time the bandage was again removed, the condition of the toe was found to be satisfactory and a new bandage was applied.
Dr. Farley related that during the course of this visit plaintiff informed him that he was working in Livaudais’ Garage, where he had also worked for several months immediately prior to his employment by defendant. Plaintiff, on cross-examination, conceded that he worked in Livaudais’ Garage for ten days doing “metal work, body and fender work, general mechanic work” and that prior to his employment by the defendant, he had also worked there.
*743 Dr. Farley stated that plaintiff again visited his offices on April 21st, at which time he found his condition so satisfactory that he considered “the man able to resume his former employment” and, accordingly, gave plaintiff a medical slip to return to work; plaintiff then visited defendant’s foreman and informed him that he was quitting to resume the job he had before securing employment with the defendant; thereafter plaintiff terminated the medical treatment before he was discharged.
Plaintiff testified that he visited Dr. Farley’s office for treatment “every two, or three days” and about “a week or ten days” after the accident he went to work for Livaudais’ Garage where he was employed for about ten days. He related that although he had earned $70 in ten days, he terminated this employment because his employer “figures I was a liability on his hands with my foot and he said he couldn’t use me”; on May 8th, 1952, or about twenty-seven days after the accident, plaintiff asserted “I finally opened a business * * * body and fender works and general welding”, which he was operating at the time of the trial in the lower court, and earning at least as much as the salary he had received while employed by defendant. Plaintiff concluded his testimony by stating he was incapable of resuming his employment with the defendant from April 11, 1952 until, at least, September 24, 1952, at which time his toe was re-examined by Dr. Farley, which was after this suit was filed and presumably in anticipation of the trial hereof.
Dr. Nick J. Accardo, an orthopedist, appeared in plaintiff’s behalf and testified that he initially examined and had plaintiff’s toe x-rayed at Hotel Dieu on August 19, 1952, which was about four months and eight days after the injury; “examination of this x-ray revealed * * * that there was an incompletely healed interarticular fracture involving the distal phalanx of the medial aspect of the left great toe. There is also an ununited fracture of the medial aspect of the distal tuft of the distal phalanx of the left great toe.” He was, therefore, of the opinion that plaintiff could not perform the duties of a tacker or welder “without complaints” on August 19, 1952, and that it would require several more weeks for the fracture to heal properly.
On cross-examination, Dr. Accardo was confronted with and was requested to read to the court the report of the Hotel Dieu x-ray department, dated August 19th, 1952, which revealed:
“ * * * left foot AP and oblique show old fracture of the distal phalanx of first toe which has healed in a satisfactory position. The fracture line involves the articular surface. No other significant abnormality demonstrated.”
Thereafter Dr. Accardo was interrogated more pertinently with respect to this x-ray report and responded as follows:
“Q. Did you review these x-rays? A. Yes, sir, I did.
“Q. At that time when you wrote your report? A. Yes, sir, I did.
* * * * * *
“Q. I take it you must have been of the opinion that the fracture was healed satisfactorily ? A. No, I wasn’t of the opinion.
“Q. But you didn’t say you were not? A. I did in my opinion. In my opinion I do state that I do not think that the fracture had healed satisfactorily.
“Q. Where do you say that? A. Should I read the opinion ?.
“By the Court:
“Read a part of it, doctor.
“A. I do not refer to the x-rays at all in my report; I withdraw that.”
However, Dr. Accardo persisted in his opinion that plaintiff could not resume his employment as a tacker or welder as of August 19, 1952.
In view of the very nebulous characteristics of Dr. Accardo’s testimony, we feel compelled to rely upon the conclusion reached by Dr. Farley, who treated plaintiff from April 14, 1952, three days after the in *744 jury, until April 21, 1952, at which time plaintiff arbitrarily terminated the relationship of doctor and patient. Dr. Farley expressed the unequivocal opinion that plaintiff was capable of returning to his employment as of April 21, 1952, and his conclusions appear to be substantiated by the fact that the plaintiff sought and obtained employment in an automobile repair shop seven days after his injury and twenty-one days thereafter opened a similar business of his own. It is, therefore, our opinion, predicated on the medical testimony contained in the record, that plaintiff has suffered no compensable disability for which he has not already been paid.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.